UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| Brittanie Simpson, on behalf of herself and all others similarly situated, | |
| Plaintiff, | CASE NO. |
| v. | CLASS ACTION COMPLAINT |
| PurchRock LLC, and Dorrance Realty LLC, | JURY TRIAL DEMANDED |
| Defendants. | |

**Nature of this Action**

1. Brittanie Simpson ("Plaintiff"), individually and on behalf of all others similarly situated, brings this class action against PurchRock LLC ("PurchRock") and Dorrance Realty LLC ("Dorrance," and, collectively, "Defendants"), under the Telephone Consumer Protection Act ("TCPA").

2. Upon information and good faith belief, Defendants routinely violate 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(c)(2) by delivering more than one advertisement or marketing text message to residential or cellular telephone numbers registered with the National Do-Not-Call Registry ("DNC Registry") without the prior express invitation or permission required by the TCPA.

3. Additionally, upon information and good faith belief, Defendants routinely violate 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(d)(4) by delivering more than one advertisement or telemarketing message to residential or cellular telephone numbers while failing to identify "the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted."

1

**Parties**

4. Plaintiff is a natural person who resides in Bridgeport, Connecticut.

5. PurchRock is a Connecticut limited liability company that runs a marketing and real estate business headquartered in Hamden, Connecticut.[1]

6. According to the State of Connecticut's records, PurchRock has two members, Robert LaChance and Adam Devine, and is formally registered under North American Industry Classification System ("NAICS") code 531390, which constitutes "establishments primarily engaged in performing real estate related services."[2]

7. According to the State of Connecticut's records, Adam Devine is a licensed real estate broker and Robert LaChance is a licensed real estate salesperson, both affiliated with Dorrance.

8. Dorrance is a Connecticut limited liability company that runs a real estate firm agency/brokerage located in Cheshire, Connecticut.

9. According to the State of Connecticut's records, Mr. Devine is the managing member of Dorrance.

10. In addition to PurchRock and Dorrance, Defendants operate Quaker Capital, LLC ("Quaker").

11. Quaker is virtually identical to PurchRock, as it shares the same address, same membership, and same NAICS coding as PurchRock.

12. Upon information and belief, Defendants operate Quaker as an extension of

---

[1] Upon information and belief, PurchRock also operates under the names "PurchRock Management LLC" and "Perch Rock Management LLC."

[2] *See* https://www.census.gov/naics/?input=531390&year=2017&details=531390 (last visited September 25, 2024).

PurchRock.

## Jurisdiction and Venue

13. This Court has subject matter jurisdiction under 47 U.S.C. § 227(c)(5), and 28 U.S.C. § 1331.

14. Venue is proper before this Court under to 28 U.S.C. § 1391 (b)(2) as a significant portion of the transactions giving rise to this action occurred in this district.

15. In particular, Defendants directed their text messages to Plaintiff's telephone in this district, and Plaintiff received Defendants' text messages in this district.

## Factual Allegations

16. Plaintiff is, and has been at all times relevant to this action, the regular and sole user of her cellular telephone number—(203) 745-XXXX.

17. Plaintiff uses her cellular telephone as her personal residential telephone number.

18. In 2003, the Federal Communications Commission ("FCC") ruled that cellular telephone numbers that are placed on the DNC registry are presumed to be residential. *In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14039 (2003).

19. Plaintiff registered her cellular telephone number with the DNC Registry on March 2, 2017, and has maintained that registration through the present date.

20. Starting in April 2022, Plaintiff received at least three text messages from Defendants, each seeking to solicit Plaintiff to use Defendants in the sale of her home:



21.     The purpose of the text messages at issue was to advertise and to market Defendants' business or services as part of helping Plaintiff sell her home.

22.     Plaintiff did not recognize the sender, is not selling her home, and was not looking to sell her home.

23.     Plaintiff is not, and was not, interested in Defendants' services or marketing.

24.     Plaintiff did not previously contact or transact with Defendants, Robert LaChance, or Adam Devine.

25.     While the unsolicited text messages sent by Quaker allude to their business name, the text messages sent by telephone number (203) 717-4402 do not identify themselves.

26.     Upon information and belief, while Quaker does not operate a website, PurchRock operates the website www.purchrock.com.

27.     PurchRock's contact number is (203) 717-4402—the same telephone number that contacted Plaintiff about selling her home.[3]

---

[3]     *See* www.purchrock.com (last visited September 25, 2024).

28. PurchRock describes itself as a "nationwide acquisition firm focused on acquiring distressed, non-performing, high yield, and value add single family & small multifamily real estate assets throughout the Northeast & Southeast regions of the United States. Helping investors, landlords, institutional buyers, and hedge funds. increase returns and put their capital back to work."[4]

29. PurchRock's website also advertises that it pairs numerous services with its offers to purchase properties from consumers.

30. According to PurchRock's website, "[w]e handle all of the heavy lifting, which means that all you need to do is sell your house."[5]

31. PurchRock states that its business is real estate "margin trading": i.e., "purchase at X, sell for Y."[6]

32. PurchRock also discloses, on its LinkedIn page, that "we take care of everything. No hidden fees, no repairs, and no agents - we make things that easy!"[7]

33. PurchRock also provides an explanatory brochure that outlines its numerous services, which, although no longer active on its website, upon information and good faith belief, is attached as Exhibit A.[8]

---

[4]   *Id*.

[5]   *Id*.

[6]   *See* https://www.youtube.com/watch?v=_oFzZGO7oI8 (3:50-4:05) (last visited October 3, 2024).

[7]   https://www.linkedin.com/posts/purchrock_purchrock-realestate-investment-activity-7241538005792882690-2dat?utm_source=share&utm_medium=member_desktop (last visited September 25, 2024).

[8]   *See* https://web.archive.org/web/20240226084234/https://www.purchrock.com/go/selling-to-a-professional/#gf_7 (last visited October 3, 2024).

34. In that brochure, PurchRock describes their purchase process to include: "(2) Investor will evaluate the house, come up with a value for it, determine if any repairs are needed, find out what your goals are, and make an offer that fits their buying criteria and helps you reach your goals"; and "(4) [i]f it's a fit, closing happens at a title company and the title company prepares the documents . . . the investor buys with all cash so it's a quick close and you get your cash quickly." *Id.* at 6.

35. Upon information and good faith belief, in exchange for providing these services, PurchRock pays substantially below fair market value for the homes it seeks to purchase.

36. In fact, PurchRock bluntly states as much, noting that "[m]any of the houses we purchase are below market value. We do this so we can resell it at a profit to another homeowner. We are looking to get a fair discount on a property."[9]

37. Additionally, PurchRock's investor-facing website, perchrockmanagement.com, touts that "PurchRock offers real estate investments to investors actively acquiring below market value, off-market properties, adding instant equity by forcing value through renovations or generating rental income. As the industry frontrunner, PurchRock applies proprietary software & technology to acquire the best investment real estate, supporting the goals and bottom line of our clients."[10]

38. Furthermore, this website states that "PurchRock uses leading-edge proprietary algorithms and technology to acquire deeply below value properties, while staying connected to you and efficiently streamlining the deals you want."[11]

---

[9] https://www.purchrock.com/faq/ (last visited September 25, 2024).

[10] *See* https://perchrockmanagement.com/about-us/ (last visited September 25, 2024) (sharing exact same logo as PurchRock's homeowner-facing website).

[11] *Id*.

39. PurchRock also touts that it uses a mixture of "pay-per-lead service[s]" plus "cold calls, text messages, and direct mail" to solicit customers.[12]

40. Specifically, the following are a small sampling of reviews PurchRock has received on the Better Business Bureau, which identify PurchRock's routine practice of repeatedly delivering telemarketing and solicitation text messages to homeowners—or suspected homeowners—absent prior express written consent, as well as PurchRock unilaterally listing a homeowner's property for sale without their consent:



---

[12] https://www.motivatedleads.com/blog/adam-devine-failing-forward-failing-faster-and-investing-in-marketing-first-motivated-leads (last visited September 25, 2024).

41. Upon information and belief, PurchRock actively and currently markets investment properties as assignment contracts to third-party investors.

42. Alternatively, PurchRock utilizes Dorrance to actually serve the role of a traditional real estate agent.

43. Upon information and belief, PurchRock lists properties for sale through Dorrance, thereby converting its telemarketing leads to Dorrance to provide services in the manner that a normal real estate agent would.

44. According to a podcast by Adam Devine, Robert LaChance, and Tom Mele, who all work for Defendants, Mr. LaChance admitted that Defendants utilize Mr. LaChance's staffing agency, REVA Global, LLC, to provide virtual assistants from the Philippines to mass-market to homeowners to obtain leads for Defendants, including cold calling and text messaging homeowners that Defendants are targeting, in order to convert those leads into "opportunities for us to purchase," "opportunities for us to list," and "opportunities for us to either buy, fix, resell— whatever we decide to do with those properties."[13]

45. In fact, Mr. Devine expressly acknowledges that mass cold calling and texting (without prior express written consent) is PurchRock's "predominant marketing channel."[14]

46. Upon information and belief, Dorrance operates or partners with PurchRock as part of its real estate operations, including directing or causing PurchRock to mass market to consumers via text message campaigns.

47. Alternatively, Dorrance knew or should have known that PurchRock mass

---

[13] *See* https://open.spotify.com/episode/3QThIz8gPm0DYPeSTJHYTd (last visited September 25, 2024).
[14] https://www.youtube.com/watch?v=oIC-2QUvcKE (23:23-24:00) (last visited October 3, 2024).

8

marketed to consumers via text message campaigns as part of PurchRock's efforts to perform real estate operations on behalf of Dorrance, and Dorrance knowingly accepted the benefits of PurchRock's telemarketing operations and ratified PurchRock's conduct.

48. Furthermore, upon information and belief, Dorrance and PurchRock share revenue resulting from these efforts.

49. Therefore, Defendants necessarily offer to pair numerous services offered by a real estate agent—appraising the fair market value of the property, arranging for title and escrow services, preparing and completing purchase paperwork, and connecting the homeowner with third-party buyers—with their communications to Plaintiff.[15]

50. Upon information and belief, PurchRock seeks to supplant the role of a traditional real estate agent while providing the same services as a real estate agent, and in exchange for doing so, is compensated by obtaining a homeowner's property at a reduced price, and thereafter selling it at an inflated price.

51. Alternatively, in the event PurchRock cannot perform its intended scheme, Dorrance steps in as a traditional real estate agent.

52. As a result, Defendants would be (and, upon belief and information, are) compensated for its services in an analogous manner to a real estate agent: after providing services to facilitate the transaction, receiving compensation from the proceeds related to the buying or selling of a home.

---

[15] *See, e.g.*, https://www.liveabout.com/what-real-estate-agents-do-2866370 (last visited September 25, 2024) (noting that real estate agents assist home sellers by, among other things, "[d]etermin[ing[ the home's value in the current market"; "[c]oordinat[ing] the process from signing the contract to closing the deal, including scheduling inspections, preparing documents and other items necessary to close"; and "help[ing] the seller to try to get the price they want and to obtain a signed purchase agreement.").

53. Plaintiff did not give Defendants prior express consent or prior express written consent to send text messages to her cellular telephone number.

54. The text messages at issue were sent for non-emergency purposes.

55. Upon information and good faith belief, the text messages at issue were sent by Defendants voluntarily.

56. The purpose of the text messages at issue was to advertise and to market Defendants' business or services.

57. Additionally, upon information and belief, Defendants also collect motivated seller consumer data and resell that information to investors, including by way of executing assignment contracts.

58. As a result, Defendants either (1) solicited Plaintiff to sell her home PurchRock at a discount in order for Defendants to resell or rent Plaintiff's home, or (2) solicited Plaintiff to submit her information to Defendants' lead generation service and, if Plaintiff expressed an interest in selling her home, Defendants would then sell that via an assignment contract to investors for a profit.

59. Plaintiff suffered actual harm as a result of the text messages at issue in that she suffered an invasion of privacy, an intrusion into her life, and a private nuisance.

60. Plaintiff suffered additional harm due to her frustration and difficulty in identifying the entity and persons responsible for the unwanted advertisement or marketing text messages to her cellular telephone number.

61. Upon information and good faith belief, Defendants knew, or should have known, that Plaintiff registered her cellular telephone number with the DNC Registry.

## Class Action Allegations

62. Plaintiff brings this action under Federal Rule of Civil Procedure 23, and as a representative of the following classes:

**Federal Do-Not-Call Registry Class:**

All persons throughout the United States (1) to whom PurchRock LLC or Dorrance Realty LLC delivered, or caused to be delivered, more than one text message within a 12-month period, promoting PurchRock LLC's or Dorrance Realty LLC's, or their business partners' goods or services, (2) where the person's residential or cellular telephone number had been registered with the National Do Not Call Registry for at least thirty days PurchRock LLC or Dorrance Realty LLC delivered, or caused to be delivered, at least two of the text messages within the 12-month period, (3) within four years preceding the date of this complaint through the date of class certification.

**Sender Identification Class:**

All persons and entities throughout the United States (1) to whom PurchRock LLC or Dorrance Realty LLC delivered, or caused to be delivered, more than one text message within a 12-month period, promoting PurchRock LLC's or Dorrance Realty LLC's, or their business partners' goods or services, (2) where the subject text messages did not state the name of the individual caller, the name of PurchRock LLC or Dorrance Realty LLC, and a telephone number or address at which PurchRock LLC or Dorrance Realty LLC may be contacted, (3) within four years preceding the date of this complaint through the date of class certification.

63. Excluded from the classes are Defendants, their officers, directors, managers, and members, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

64. Upon information and belief, the members of the classes are so numerous that joinder of all of them is impracticable.

65. The exact number of members of the classes are unknown to Plaintiff at this time, and can be determined only through appropriate discovery.

66. The members of the classes are ascertainable because the classes are defined by reference to objective criteria.

11

67. In addition, the members of the classes are identifiable in that, upon information and belief, their cellular telephone numbers, names, and addresses can be identified in business records maintained by Defendants, and by third parties.

68. Plaintiff's claims are typical of the claims of the members of the classes.

69. As it did for all members of the Federal Do-Not-Call Registry Class, Defendants delivered solicitation text messages to Plaintiff's telephone number more than thirty days after Plaintiff registered her cellular telephone number with the DNC Registry.

70. As it did for all members of the Sender Identification Class, Defendants delivered solicitation text messages to Plaintiff's telephone number where the subject text messages did not state the name of the individual caller, the name of Defendants, and a telephone number or address at which it may be contacted.

71. Plaintiff's claims, and the claims of the members of the classes, originate from the same conduct, practice, and procedure on the part of Defendants.

72. Plaintiff's claims are based on the same theories as are the claims of the members of the classes.

73. Plaintiff suffered the same injuries as the members of the classes.

74. Plaintiff will fairly and adequately protect the interests of the members of the classes.

75. Plaintiff's interests in this matter are not directly or irrevocably antagonistic to the interests of the members of the classes.

76. Plaintiff will vigorously pursue the claims of the members of the classes.

77. Plaintiff has retained counsel experienced and competent in class action litigation.

78. Plaintiff's counsel will vigorously pursue this matter.

79. Plaintiff's counsel will assert, protect, and otherwise represent the members of the class.

80. The questions of law and fact common to the members of the classes predominate over questions that may affect individual members of the classes.

81. Issues of law and fact common to all members of the classes are:

   a. Defendants' conduct, pattern, and practice as it pertains to delivering advertisement and telemarketing text messages;

   b. For the Federal Do-Not-Call Registry Class, Defendants' practice of delivering text messages, for solicitation purposes, to telephone numbers already registered on the DNC Registry for more than thirty days;

   c. For the Sender Identification Class, Defendants' practice of delivering text messages, for solicitation purposes, without identifying the name of the individual caller, the name of Defendants, and a telephone number or address at which Defendants may be contacted;

   d. Whether Dorrance is responsible for the conduct of PurchRock based on agency theories

   e. Defendants' violations of the TCPA; and

   f. The availability of statutory penalties.

82. A class action is superior to all other available methods for the fair and efficient adjudication of this matter.

83. If brought and prosecuted individually, the claims of the members of the classes would require proof of the same material and substantive facts.

84. The pursuit of separate actions by individual members of the classes would, as a practical matter, be dispositive of the interests of other members of the classes, and could substantially impair or impede their ability to protect their interests.

85. The pursuit of separate actions by individual members of the classes could create a risk of inconsistent or varying adjudications, which might establish incompatible standards of conduct for Defendants.

86. These varying adjudications and incompatible standards of conduct, in connection with presentation of the same essential facts, proof, and legal theories, could also create and allow the existence of inconsistent and incompatible rights within the classes.

87. The damages suffered by the individual member of the classes may be relatively small, thus, the expense and burden to litigate each of their claims individually make it difficult for the members of the classes to redress the wrongs done to them.

88. The pursuit of Plaintiff's claims, and the claims of the members of the classes, in one forum will achieve efficiency and promote judicial economy.

89. There will be no extraordinary difficulty in the management of this action as a class action.

90. Defendants acted or refused to act on grounds generally applicable to the members of the classes, making final declaratory or injunctive relief appropriate.

**Count I**
**Violation of 47 U.S.C. § 227(c)(5)**
**On behalf of the Federal Do-Not-Call Registry Class**

91. Plaintiff repeats and re-alleges each and every factual allegation contained in paragraphs 1-90.

14

92. A text message is a "call" as defined by the TCPA. *See, e.g.*, *Duran v. La Boom Disco, Inc.*, 955 F.3d 279, 280 n.4 (2d Cir. 2020) ("It is undisputed that '[a] text message to a cellular telephone . . . qualifies as a 'call' within the compass of [the TCPA].'") (internal citation omitted); *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009).

93. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

94. Section 64.1200(e) provides that §§ 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers."

95. Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of those regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c).

96. Defendants violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff and the class members who registered their respective cellular or residential telephone numbers with the DNC Registry, which is a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

97. Defendants violated 47 U.S.C. § 227(c)(5) because it delivered, or caused to be delivered, to Plaintiff and members of the Federal Do-Not-Call Registry Class, more than one solicitation call or text message in a 12-month period in violation of 47 C.F.R. § 64.1200.

98. In the alternative, PurchRock violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff and the class members who registered their respective cellular or residential telephone numbers with the DNC Registry, and Dorrance is liable for PurchRock's violations because it ratified PurchRock's conduct by accepting leads generated by PurchRock's telemarketing campaign, and agreeing to share revenue with PurchRock that arose out of that telemarketing campaign.

99. As a result of Defendants' violations of 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200, Plaintiff, and the members of the Federal Do-Not-Call Registry Class, are entitled to damages in an amount to be proven at trial.

### Count II
### Violation of 47 U.S.C. § 227(c)(5)
### On behalf of the Sender Identification Class

100. Plaintiff repeats and re-alleges each and every factual allegation contained in paragraphs 1-90.

101. A text message is a "call" as defined by the TCPA. *See, e.g.*, *Duran v. La Boom Disco, Inc.*, 955 F.3d 279, 280 n.4 (2d Cir. 2020) ("It is undisputed that '[a] text message to a cellular telephone . . . qualifies as a 'call' within the compass of [the TCPA].'") (internal citation omitted); *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009).

102. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(d), provides in relevant part that "[a] person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the

call is being made, and a telephone number or address at which the person or entity may be contacted." *Id.* at § 64.1200(d)(4).

103. Section 64.1200(e) provides that §§ 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers."

104. Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of those regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c).

105. Defendants violated 47 C.F.R. § 64.1200(d)(4) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff and the class members while failing to "provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted."

106. Defendants therefore violated 47 U.S.C. § 227(c)(5) because it delivered, or caused to be delivered, to Plaintiff and members of the Sender Identification Class, more than one solicitation call or text message in a 12-month period in violation of 47 C.F.R. § 64.1200(d)(4).

107. In the alternative, PurchRock violated 47 C.F.R. § 64.1200(d)(4) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff and the class members while failing to "provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted," and Dorrance is liable for PurchRock's

violations because it ratified PurchRock's conduct by accepting leads generated by PurchRock's telemarketing campaign, and agreeing to share revenue with PurchRock's that arose out of that telemarketing campaign.

108. As a result of Defendants' violations of 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(d)(4), Plaintiff, and the members of the Sender Identification Class, are entitled to damages in an amount to be proven at trial.

**Prayer for Relief**

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

    a. Determining that this action is a proper class action;

    b. Designating Plaintiff as a class representative of the class under Federal Rule of Civil Procedure 23;

    c. Designating Plaintiff's counsel as class counsel under Federal Rule of Civil Procedure 23;

    d. Adjudging and declaring that Defendants violated 47 U.S.C. § 227(c)(5);

    e. Enjoining Defendants from continuing its violative behavior, including continuing to deliver solicitation text messages to telephone numbers registered with the DNC Registry for at least thirty days;

    f. Awarding Plaintiff and the members of the class damages under 47 U.S.C. § 227(c)(5)(B);

    g. Awarding Plaintiff and the members of the classes treble damages under 47 U.S.C. § 227(c)(5)(C);

    h. Awarding Plaintiff and the classes reasonable attorneys' fees, costs, and expenses under Rule 23 of the Federal Rules of Civil Procedure;

i. Awarding Plaintiff and the members of the classes any pre-judgment and post-judgment interest as may be allowed under the law; and

j. Awarding such other and further relief as the Court may deem just and proper.

### Demand for Jury Trial

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all triable issues.

Date: October 22, 2024.

/s/
Sarah Poriss, Esq.
**SARAH PORISS, ATTORNEY AT LAW, LLC**
777 Farmington Avenue
West Hartford, CT 06119
Tele: 860-233-0336
Fax: 866-424-4880
Email: sarah@sarahporiss.com

Alex D. Kruzyk, Esq.* (to seek admission *pro hac vice*)
akruzyk@pkglegal.com
Bryan A. Giribaldo, Esq.* (to seek admission *pro hac vice*)
bgiribaldo@pkglegal.com
**Pardell, Kruzyk & Giribaldo, PLLC**
7500 Rialto Blvd. Suite 1-250
Austin, Texas 78735
Tele: (561) 726-8444
Fax: (877) 453-8003

*Counsel for Plaintiff and the proposed classes*